# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| JOHN T. MORGAN, | CASE NO. 3:20-CV-02058 |
| Petitioner, | DISTRICT JUDGE SOLOMON OLIVER, JR. |
| vs. |  |
| WARDEN ROBERT VASHAW, *et al.*, | MAGISTRATE JUDGE AMANDA M. KNAPP |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner John T. Morgan ("Petitioner") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  (ECF Doc. 1 ("Petition").)  Mr. Morgan filed his Petition on September 8, 2020.[1] (*Id*. at p. 17.)   His Petition relates to his convictions for three counts of aggravated robbery and twelve-year prison sentence in Williams County Common Pleas Court Case No. 18CR000007, *State of Ohio v. John T. Morgan* following a no contest plea.  (ECF Doc. 1 p. 1; ECF Doc. 10-1 pp. 78-83.)  Respondent filed an Answer/Return of Writ.  (ECF Doc. 10.)  Mr. Morgan did not file a Traverse.

This matter was reassigned to the undersigned Magistrate Judge on October 1, 2021 pursuant to General Order 2021-15.  For the reasons set forth in further detail herein, the undersigned recommends that the Court **DENY** Mr. Morgan's Petition as to Grounds One, Two, and Three because they are without merit and **DISMISS and/or DENY** Mr. Morgan's Petition as to Ground Four because it is not cognizable and is without merit.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). The Petition was docketed on September 14, 2020.  (ECF Doc. 1.)

## I.    Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Sixth District Ohio Court of Appeals summarized the facts underlying Mr. Morgan's conviction and sentence as follows:

{¶ 2} On January 23, 2018, a six-count indictment was filed charging appellant with three counts of aggravated robbery, with specifications, one count of theft of drugs, and two counts of having a weapon while under disability. The charges stemmed from a series of three armed robberies in November 2015, in Williams County, Ohio, where the suspect stole cash from two gas stations and oxycodone from a pharmacy. The suspect in each robbery similarly had his face covered by a mask and gloves on his hands.

{¶ 3} Prior to appellant's indictment, a series of robberies spanning 2015-2016 and involving Ohio, Michigan, and Indiana remained unsolved Law enforcement from the affected jurisdictions had been conferring in an attempt to apprehend the suspect or suspects. Following a tip and corroborating evidence, appellant was singled out as the suspect in the Ohio robberies and several extra-jurisdictional robberies.

{¶ 4} On March 16, 2016, following the execution of several search warrants at appellant's home in Michigan, appellant was arrested in Williams County, Ohio. After posting bond in Michigan, appellant and his girlfriend allegedly robbed a bank in Michigan and fled the jurisdiction. They were apprehended in Hamilton County, Ohio.

{¶ 5} In the present matter, several pretrial motions were filed. Relevant to this appeal, on January 29, 2018, appellant filed a motion to preserve evidence which the court granted on January 30, 2018. On May 15, 2018, appellant filed a motion to dismiss or, alternatively, to prohibit the state from using photographs as a substitute for physical evidence that was destroyed. Specifically, it was discovered that various items of physical evidence, including a face mask, clothing, gloves, and a toy gun, that were recovered by law enforcement during appellant's arrest in Hamilton County, Ohio, were destroyed following the conclusion of the criminal proceedings in Michigan and prior to the filing of the

2

indictment in the present case. Appellant also filed a motion in limine requesting that the court prohibit the state from introducing evidence of other robberies committed by appellant. Appellant argued that the robberies were not similar enough to establish the probative value as outweighing the danger of unfair prejudice.

{¶ 6} A hearing on the motions was held on June 21, 2018. On June 29, 2018, as to the other acts evidence the trial court noted that the 15 additional robberies took place in the tri-state area between August 8, 2015 and March 12, 2016, and that the multiple similarities between the robberies was sufficient to establish a "behavioral fingerprint." The court, however, limited the introduction of such evidence to the nine robberies where the suspect covered the gun with a plastic bag as occurred in the robberies at issue.

{¶ 7} As to the state's destruction of evidence, the court concluded that appellant failed to demonstrate either that the evidence was "materially exculpatory" or that the state acted in bad faith. The court then denied the motion to dismiss or to exclude the photographic substitute evidence.

{¶ 8} On July 23, 2018, the matter proceeded to a jury trial. After two days of trial, appellant withdrew his not guilty pleas and entered pleas of no contest to three counts of aggravated robbery.

*State v. Morgan*, 2020-Ohio-292, ¶¶ 2-8, 2020 WL 620407, *1-2 (Ohio App. Ct. 2020); (ECF

Doc. 10-1, pp. 134-35.)

## II.    Procedural Background

### A.    State Court Conviction

A Williams County Grand Jury indicted Mr. Morgan January 23, 2018 on three counts of

aggravated robbery (Counts I, III, and V), one count of theft of drugs (Count II), and two counts

of having weapons while under disability (Counts IV and VI).  (ECF Doc. 10-1, pp. 3-5.)  Counts

I, III, and V carried repeat violent offender specifications, and Counts III and V carried firearm

specifications.  (*Id.*)  Mr. Morgan filed a motion to preserve evidence on January 29, 2018 (*id.* at

pp. 6-8), which the trial court granted on January 30, 2018 (*id.* at pp. 9, 12).

Mr. Morgan was arraigned on February 7, 2018.  (ECF Doc. 10-1, pp. 10-11.)  He

entered a not guilty plea to all counts.  (*Id.*)  Mr. Morgan filed a motion in limine on April 2,

3

2018, seeking to prohibit the state from introducing evidence of other robberies, crimes, or conduct of the defendant unrelated to the acts charged in the indictment.  (*Id*. at pp. 13-18.)  The State filed its own motion in limine on May 17, 2018, seeking to allow presentation of prior acts evidence.  (*Id*. at pp. 19-50.)  Following a hearing, the trial court issued a decision and order on June 29, 2018 allowing evidence of prior robberies "where a plastic bag was used by the perpetrator to cover the weapon used during the robbery," finding that "[t]he use of the plastic bag to cover the weapon, along with all other similarities in the crimes committed, create[d] a 'behavioral fingerprint.'"  (*Id*. at pp. 51-60.)

On May 15, 2018, Mr. Morgan filed a motion to dismiss or alternatively to prohibit the state from using photographs as a substitute for physical evidence, arguing that physical evidence was unavailable for inspection or testing by defendant or use at trial because law enforcement or other agents of the State destroyed the physical evidence prior to the filing of the indictment against the defendant.  (ECF Doc. 10-1, pp. 61-64.)  The State filed a response to the request for dismissal on June 18, 2018.  (*Id*. at pp. 65, 190-92.)  Following a hearing, the trial court issued a decision and order on July 5, 2018 denying and overruling Mr. Morgan's motion. (Tr. 65-71.) The trial court explained that the items the State intended to introduce were: "photographs of a mask, a CO2 gun and gloves found in the engine compartment which were discovered during the Defendant's arrest in Hamilton County, Ohio" (*id*. at p. 67).  The trial court also explained that the Michigan authorities destroyed "the items of personal property recovered from the Defendant's engine compartment" following the conclusion of the window for filing an appeal from Mr. Morgan's no contest plea in Michigan to a bank robbery, as those authorities routinely did.  (*Id*. at pp. 67-68.)  The trial court concluded that Mr. Morgan had "not met his burden to establish that the personal property which was destroyed by Michigan authorities was 'materially

4

exculpatory.'"  (*Id*. at p. 70.)  The trial court also found no "evidence that the State of Ohio

acted in bad faith," stating that "[i]t appear[ed] that Ohio authorities discovered the destruction

of physical evidence long after the Michigan authorities destroyed it [and] [a]pparently, the

Defendant did not raise this issue in his Michigan criminal proceeding nor did he appeal his

Michigan convictions."  (*Id*. at pp. 70-71.)

After two days of trial, Mr. Morgan entered a no contest plea to the three aggravated

robbery charges in Counts I, III, and V on July 25, 2018.[2]  (ECF Doc. 10-1, pp. 78, 135.)  The

court accepted the plea and found Mr. Morgan guilty on all three counts.  (*Id*. at pp. 80, 81.)  The

trial court sentenced Mr. Morgan to consecutive terms of four years in prison for each aggravated

robbery count, for a total of twelve years in prison.  (*Id*. at p. 81.)  The trial court ordered that

Mr. Morgan's sentence in Case No. 18CR000007 run concurrently with his sentence in Branch

County, Michigan Case No. 16091833-FC-C.  (*Id*. at pp. 81-82.)  The prosecutor entered a *nolle*

*prosequi* to the remaining charges in the indictment.  (*Id*. at pp. 82-83.)

**B.**    **Direct Appeal**

Mr. Morgan filed a notice of appeal on August 22, 2018 through counsel.  (ECF Doc. 10-

1, pp. 84-90.)  He raised the following assignments of error in his merit brief, filed on March 28,

2019 (*id*. at pp. 91-107):

1.    Once the State elects to produce evidence, a defendant has a
      constitutionally guaranteed due process right to its' preservation.

2.    If evidence in the custody of law enforcement is destroyed prior to charges
      being filed and the appellant being able to file a motion to preserve
      evidence, the appellant does not need to establish the evidence was
      materially exculpatory for the case to be dismissed due to a violation of
      the appellant's due process right.

---

[2] The trial court's *nunc pro tunc* sentencing entry was docketed on August 8, 2018.  (ECF Doc. 10-1, p. 78.)

    3.       Appellant's due process rights require preservation of all evidence until charges are filed and the appellant has an opportunity to demand discovery/preservation.

    4.       The trial court abused its discretion when it allowed testimony regarding bad acts evidence against the appellant.

(*id*. at p. 94).  The State filed its brief on August 1, 2019.  (*Id*. at pp. 108-32.)  The court of appeals affirmed the trial court's judgment and sentence on January 31, 2020.  (*Id*. at pp. 133-45.)  On March 16, 2020, Mr. Morgan filed a notice of appeal with the Supreme Court of Ohio (*id*. at pp. 146-47) and a memorandum in support of jurisdiction (*id*. at pp. 148-60) through counsel.  He raised the following propositions of law:

    1.       Once the State elects to produce evidence, a defendant has a constitutionally guaranteed due process right to its' preservation.

    2.       If evidence in the custody of law enforcement is destroyed prior to charges being filed and the appellant being able to file a motion to preserve evidence, the appellant does not need to establish the evidence was materially exculpatory for the case to be dismissed due to a violation of the appellant's due process right.

    3.       Appellant's due process rights require preservation of all evidence until charges are filed and the appellant has an opportunity to demand discovery/preservation.

    4.       The trial court abused its discretion when it allowed testimony regarding bad acts evidence against the appellant

(*Id*. at pp. 155-60.)  The State filed a memorandum in opposition to jurisdiction on April 6, 2010.  (*Id*. at pp. 161-65.)  On May 26, 2020, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Morgan's appeal.  (*Id*. at p. 166.)

**C.**    **Federal Habeas Corpus Petition**

    Mr. Morgan filed his *pro se* Petition in this Court on September 8, 2020, raising the following four grounds for relief:

**GROUND ONE**: Once the State elects to produce evidence a defendant has a constitutionally guaranteed due process right to its preservation.

**Supporting Facts**:  Mr. Morgan was unable to provide a defense, for the lack of the courts preserving of the evidence denying the defendant the opportunity to exam/test the alleged evidence against him.

**GROUND TWO**:  If evidence in the custody of law enforcement is destroyed prior to charges being filed and the appellant being able to file motion to preserve evidence, the appellant does not need to establish the evidence was materially exculpatory for the case to be dismissed due to a violation of the appellant's due process right.

**Supporting Facts**:  The appellant does not need to establish the evidence was materially exculpatory for the case to be dismissed.  The State over stepped the constitutional provision with further proceeding with court process without the physical evidence against the defendant at hand.

**GROUND THREE**:  Appellant's due process rights require preservation of all evidence unto charges are filed and the appellant has an opportunity to demand discovery/preservation.

**Supporting Facts**:   The defendant['s rights were violated without the opportunity to preserve his right of innocence.  The courts should not require any court procedures to continue without the defense, the allowed benefit to exam/test evidence against a defendant.

**GROUND FOUR**:   The trial court abused its discretion when it allowed testimony regarding bad acts evidence against the appellant thus violating appellant's due process rights to a fair trial.

**Supporting Facts**:  The use of one['s prior acts may cause manifest injustice to one['s constitutional rights.  In theory could be looked as if it was double jeopardy, for the reasons one has already paid his debt to society, and may pay again for one['] mistake in the past.  If the courts truely had a solid case one would have no need to raise previous acts.

(ECF Doc. 1 pp. 7-12; ECF Doc. 1-2, pp. 10-25.)

### III.    Law & Analysis

Respondent initially argues that this Court may decline to hear Mr. Morgan's Petition

under the concurrent sentence doctrine.  (ECF Doc. 10, p. 8.)  Respondent also argues that the

Court should deny and/or dismiss the Petition because Grounds One through Three are without

7

merit and Ground Four is not cognizable on federal habeas review.  (*Id.* at pp. 9-18.)  Mr. Morgan has not filed a response to Respondent's arguments.  Mr. Morgan's Petition and Respondent's arguments are addressed below.

**A.    Whether Court Should Decline to Hear Petition Based on Concurrent Sentence Doctrine**

Respondent argues that this Court should decline to hear Mr. Morgan's Petition under the concurrent sentence doctrine because his conviction in Ohio is being served concurrently with an equal or longer concurrent Michigan sentence.  (ECF Doc. 10, p. 8.)

The Sixth Circuit has acknowledged its acceptance of the concurrent sentence doctrine, explaining that under the doctrine "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction."  *Winn v. Renico*, 175 F. App'x 728, 731–32 (6th Cir. 2006) (citing *United States v. Jeter,* 775 F.2d 670 (6th Cir.1985)).  The doctrine is discretionary, *Wilkens v. Lafler*, 487 F. App'x 983, 987 (6th Cir. 2012), and is a doctrine that courts are "hesitant to apply," *Winn*, 175 F. App'x at 732.  Accordingly, courts invoke the doctrine only in "situations 'where it is clear that there is no collateral consequence to the defendant and the issue does not otherwise involve a significant question meriting consideration.'" *Wilkens*, 487 F. App'x at 987 (internal citation omitted); *Winn*, 175 F. App'x at 732 (explaining the court had invoked the concurrent sentence doctrine "when there is no possibility of adverse 'collateral consequences' if the convictions stand").

Respondent asserts that invoking the discretionary concurrent sentence doctrine is appropriate in this case because:

> Morgan is currently challenging an Ohio sentence of 12 years in prison. Morgan's concurrent Michigan sentence has a 25-year maximum sentence. This maximum sentence is lengthier than the sentence Morgan challenges in the instant petition

and he has failed to allege any collateral consequences to the conviction he currently challenges.

(ECF Doc. 10, p. 8.)  Although Petitioner has not filed a Traverse or responded to Respondent's contention that Petitioner has "failed to allege any collateral consequences to the conviction he currently challenges," (*id*.), the undersigned observes that Mr. Morgan is nevertheless serving a twelve-year prison sentence with mandatory post-release control following his release from imprisonment.  (*See* ECF Doc. 10-1, pp. 81-82 (sentencing entry reflecting imposition of mandatory five-year post-release control on each of the three convictions).)  On this record, it is not clear that there is no possibility of collateral consequences to Mr. Morgan from his Ohio convictions.  *Wilkens*, 487 F. App'x at 987; *Winn*, 175 F. App'x at 732.  Accordingly, the undersigned recommends that the Court decline to invoke the concurrent sentence doctrine, and proceeds to consider Respondent's arguments for denial and/or dismissal of the Petition.

## B.     Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  Further, if an application for writ of

habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted unless the adjudication of the claim"

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *See Cullen*, 563 U.S. at 181.

## C.  Grounds One, Two, and Three

Respondent argues that the Court should deny Grounds One, Two, and Three, which each allege a denial of due process based on the State's failure to preserve physical evidence. (ECF Doc. 10, pp. 11-18.) Those claims were presented to and adjudicated on the merits by the state court of appeals. (ECF Doc. 10-1, pp. 133-45.) Mr. Morgan then presented the claims to the Supreme Court of Ohio (*id*. at pp. 148-60), which declined to accept jurisdiction of Mr. Morgan's appeal (*id*. at p. 166). The undersigned addresses these exhausted claims below.

### 1.  Constitutional Due Process Right to Evidence

The Supreme Court in *Arizona v. Youngblood* considered "the extent to which the Due Process Clause of the Fourteenth Amendment requires the State to preserve evidentiary material that might be useful to a criminal defendant." 488 U.S. 51, 52 (1988). In *Youngblood*, the State did not preserve semen samples from a victim's body and clothing in a case resulting in a conviction for child molestation, sexual assault, and kidnapping. *Id.* The Supreme Court reviewed earlier Supreme Court precedent, including *Brady v. Maryland*, 373 U.S. 83 (1963), where it was held that "the suppression by the prosecution of evidence favorable to the accused

10

upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Youngblood*, 488 U.S. at 55 (quoting *Brady*, 373 U.S. at 87). The Supreme Court also observed that the court subsequently held in *United States v. Agurs*, 427 U.S. 97 (1976), that "the prosecution had a duty to disclose some evidence of this description even though no requests were made for it, but at the same time . . . rejected the notion that a 'prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel.'" *Youngblood*, 488 U.S. at 55 (quoting *Agurs*, 427 U.S. at 111). Because the Court found there was "no question that the State complied with *Brady* and *Agurs*," it concluded that in order for the defendant to "prevail on federal constitutional grounds . . . it must be because of some constitutional duty over and above that imposed by cases such as *Brady* and *Agurs*." *Id.* at 56. In this regard, the Supreme Court observed that:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.

*Id.* at 57 (emphasis added); *see also Ilinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (discussing *Brady* and *Youngblood*); *see also United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (rejecting defendant's argument that evidence was material exculpatory evidence because his expert was prevented from conducting tests which might have exonerated him and finding that the evidence was only potentially useful evidence) (relying on *Youngblood*).

The Supreme Court explained that this difference in treatment was found in part "in the observation made by the Court in *Trombetta*, . . . that '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.'" *Id.* at 57-58 (quoting *California v.*

11

*Trombetta*, 467 U.S. 479, 486 (1984) (bracket in original)) (finding no federal constitutional violation where the state failed to preserve breath samples underlying test results showing the blood alcohol concentration of suspected drunk drivers).  The Supreme Court also explained that the difference in treatment stemmed in part from the court's "unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause . . . as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."  *Youngblood*, at 58 (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941)).

In answering the question presented in *Youngblood*, namely "the extent to which the Due Process Clause of the Fourteenth Amendment requires the State to preserve evidentiary material that might be useful to a criminal defendant," 488 U.S. at 52, the Supreme Court held "unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially useful evidence* does not constitute a denial of due process of law," *id*. at 58 (emphasis added). The Supreme Court found that the police's failure "to refrigerate the clothing and to perform tests on the semen samples [could] at worst be described as negligence."  *Id.*  It held that the unpreserved evidence was not concealed from the defendant, that the defendant's expert declined to perform tests on the evidence, and that there was "no suggestion of bad faith on the part of the police."  *Id.* at 58-59.  Thus, the Supreme Court concluded that no constitutional due process violation had occurred.  *Id.* at 59.

Similarly, the Supreme Court in *Fisher* found no constitutional due process violation based on facts showing that the state had destroyed a substance seized from the defendant, where four tests conducted by the state showed the substance was cocaine. 540 U.S. 544.  The Supreme Court found that "[t]he substance seized from [defendant] was plainly the sort of

'potentially useful evidence' referred to in *Youngblood*, not the material exculpatory evidence addressed in *Brady* and *Agurs*," and observed that defendant at most could "hope that, had the evidence been preserved, a *fifth* test conducted on the substance would have exonerated him." *Id.* at 548 (emphasis in original).  Since the defendant could not show bad faith on the part of the police, the Supreme Court concluded that the defendant failed to show a constitutional due process violation under *Youngblood*.  *Id.*

Thus, Supreme Court precedent establishes that a due process violation occurs only where the State destroys materially exculpatory evidence or fails in bad faith to preserve "potentially useful evidence."  *See Fisher*, 540 U.S. at 547-48; *Wright*, 260 F.3d at 570-71. Negligence, or even gross negligence, "in failing to preserve potentially exculpatory evidence" does not establish bad faith.  *United States v. Gaither*, 65 F. App'x 514, 517 (6th Cir. 2003).  For evidence to meet the "standard of constitutional materiality," the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Trombetta*, 467 U.S. at 489; *see also Wright*, 260 F.3d at 571 (quoting *Trombetta*, 467 U.S. at 488-89).

### 2.    State Court Adjudication of Mr. Morgan's Due Process Right to Evidence

Mr. Morgan's claims in Grounds One, Two, and Three of the Petition, that his due process rights were violated because evidence was destroyed prior to his prosecution, were adjudicated on the merits by the state court of appeals.  *Morgan*, 2020 WL 620407, *2-4; (ECF Doc. 10-1, pp. 136-40.)  The court found as follows:

{¶ 9} Appellant's first three assignments of error argue that his due process rights were violated by the court's failure to dismiss the charges due to the state's failure to preserve physical evidence. Alternatively, appellant argues that the state should have been prohibited from using photographic evidence as a substitute for the

destroyed items. Appellant claims that because the evidence was destroyed prior to the charges in the indictment, the burden should shift to the state to prove that the evidence destroyed was not exculpatory and that a showing of bad faith is not necessary. Conversely, the state asserts that the burden of demonstrating the exculpatory nature of the evidence remains with appellant and that, at most, he can show only that the evidence was potentially useful.

{¶ 10} The Supreme Court of Ohio has explained that the destruction of materially exculpatory evidence violates a defendant's due process rights regardless of whether the state acted in good or bad faith. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 74-76, citing *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) and *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). But where evidence is only "potentially useful," the failure to preserve the evidence does not violate a defendant's due process rights unless the defendant can show that the state acted in bad faith. *Id.* at ¶ 76-77, quoting *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10. Potentially useful evidence is "'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Geeslin* at ¶ 9, quoting *Arizona* at 58. *See State v. Johnson*, 6th Dist. Lucas Nos. L-07-1193, L-08-1230, 2009-Ohio-45, ¶ 17-18.

{¶ 11} Applying the relevant case law to the facts of this case, we conclude that the physical evidence at issue was not exculpatory [FN 1] but was potentially useful in that the items would have needed further testing in order to exonerate appellant. We further note that the likelihood that the items would have, in fact, exonerated appellant was remote. The items were found in an engine compartment of appellant's vehicle. They were not left in the passenger compartment of the vehicle or in an unattended, neutral location.

> [FN 1 - We reject appellant's contention that the destruction should be deemed exculpatory solely due to the fact that it was done prior to appellant's indictment. *See Geeslin* at ¶ 8.]

{¶ 12} Since the evidence at issue was only potentially useful, we must determine whether its destruction was done in bad faith. This court has defined "bad faith" as "something more than bad judgment or negligence." *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 30 (6th Dist.). "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." (Internal citations and quotations omitted.) *Id.*

{¶ 13} In this case it is unclear whether the Quincy Police Department failed to notify the Montpelier, Ohio authorities or whether the email was sent but police failed to request that the items be preserved. At the hearing on the motion, Montpelier Police Chief Daniel McKee testified that in an attempt to gather

14

physical evidence he visited the Quincy, Michigan police department and spoke with their chief who indicated that the evidence had been destroyed following email notification to all potentially interested jurisdictions. He could not recall if the conversation took place before or after appellant was indicted. Chief McKee did not indicate an awareness that the department had actually received the email and noted that he learned that the items had been destroyed several months prior to appellant's indictment.

{¶ 14} Coldwater, Michigan Police Lieutenant Patrick Beeman accompanied Quincy, Michigan Police to Hamilton County, Ohio, where appellant was arrested following a bank robbery. During the search of appellant's vehicle, Lieutenant Beeman stated that they recovered money and that there were also items recovered in the engine compartment including gloves, a mask, and a toy gun.

{¶ 15} As to the destruction of the recovered items, Beeman testified that after appellant entered a no contest plea in the bank robbery case now-retired Quincy Police Chief Onley sent out an email to all jurisdictions on the distribution list informing the interested jurisdictions that the evidence would be destroyed if no one contacted him expressing interest. According to Lieutenant Beeman, Onley was never contacted and prior to retiring Onley, in "clearing up" old cases, destroyed the evidence.

{¶ 16} These facts are not as compelling as cases from this court where we found that officers acted in bad faith in failing to preserve potentially useful evidence. In *Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, we concluded that a state trooper's failure to preserve the dash cam videotape of appellant's field sobriety tests, in direct contravention of department policy and the unconvincing story of the "accidental" erasure, demonstrated bad faith. *Id.* at ¶ 31-35. Similarly, in *In re J.B.*, 2017-Ohio-406, 84 N.E.3d 23 (6th Dist.), we found that the destruction of a deputy's videotaped interview of a juvenile suspect amounted to bad faith. So finding, we noted that the deputy was initially offered a copy of the interview but declined, he then failed to request a copy after learning that appellant had been criminally charged; the tape was ultimately overwritten. *Id.* at ¶ 35.

{¶ 17} Based on the forgoing and examining the relevant case law, we find that appellant failed to demonstrate that the state acted in bad faith in relation to the destroyed evidence. In addition, we note that the court, being in the best position to examine and weigh the evidence likewise determined that the state did not act in bad faith. *Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, at ¶ 84. Accordingly, we find that appellant's first, second, and third assignments of error are not well-taken.

*Morgan*, 2020 WL 620407, *2-4; (ECF Doc. 10-1, pp. 136-40.)

15

The record reflects that the state court of appeals properly cited to and relied upon Supreme Court precedent in *Youngblood* and *Trombetta* when assessing Mr. Morgan's due process claim relating to the destruction of physical evidence.  In particular, the appeals court stated: "Applying the relevant case law to the facts of this case, we conclude that the physical evidence at issue was not exculpatory but was potentially useful in that the items would have needed further testing in order to exonerate appellant."  *Morgan*, 2020 WL 620407, *3 (footnote omitted).  The appeals court further held that "the likelihood that the items would have, in fact, exonerated appellant was remote" given that "[t]he items were found in an engine compartment of appellant's vehicle[] [and] . . . not left in the passenger compartment of the vehicle or in an unattended, neutral location."  *Id.*

Consistent with clearly established federal law, the appeals court next addressed whether the destruction of the evidence prior to Mr. Morgan's indictment was in "bad faith."  *Id.*  In doing so, the appeals court observed that bad faith is more than negligence; it concluded based on the record and relevant case law that there was no showing that the State acted in bad faith with respect to the destroyed evidence.  *Id.* at *3-4.

The appeals court's factual findings that the evidence at issue was potentially useful but not materially exculpatory, and that there was no showing of bad faith, are findings that are entitled to a presumption of correctness on federal habeas review and may be rebutted by Petitioner only with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Lorraine v. Coyle*, 291 F.3d 416, 442-43 (6th Cir. 2002), *opinion corrected on denial of reh'g,* 307 F.3d 459 (6th Cir. 2002) (determining that district failed to afford a presumption of correctness as required by 28 U.S.C. § 2254(e)(1) to the state court's finding of no evidence of bad faith with respect to turning over evidence);  *Johnson v. Kerns*, No. 3:10CV0310, 2011 WL 3288396, at *20 (N.D.

16

Ohio July 12, 2011) ("The presumption of correctness extends to the state court's findings of fact concerning the lack of evidence of bad faith.") (citing *Lorraine*, 291 F.3d at 442-43), *report and recommendation adopted,* No. 3:10 CV 310, 2011 WL 3290170 (N.D. Ohio July 29, 2011).

The undersigned finds that Mr. Morgan has failed to present clear and convincing evidence to rebut the state court's factual findings.  He has also failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Further, the undersigned concludes that it was not contrary to or an unreasonable application of clearly established federal law for the state court to find no due process violation based on the destruction of physical evidence because the evidence in question was only "potentially useful" and there was no showing of bad faith.

Accordingly, for the reasons explained above, the undersigned recommends that the Court DENY Mr. Morgan's Petition as to Grounds One, Two, and Three.

### D.    Ground Four

In Ground Four, Mr. Morgan argues that the trial court abused its discretion by allowing admission of bad acts evidence and thus violated his due process right to a fair trial.  (ECF Doc. 1 p. 12; ECF Doc. 1-2, pp. 22-35.)  The claim in Ground Four was presented to and adjudicated on the merits by the state court of appeals.  (ECF Doc. 10-1, pp. 133-45.)  Mr. Morgan then presented the claims to the Supreme Court of Ohio.  (*Id*. at pp. 148-60.)  The Supreme Court of Ohio declined to accept jurisdiction of Mr. Morgan's appeal.  (*Id*. at p. 166.)

Respondent argues that the Court should dismiss and not reach the merits of Ground Four because the claim is not cognizable on federal habeas review.  (ECF Doc. 10, pp. 8-10.)  For the reasons explained below, the undersigned finds the Ground Four should be DISMISSED to the extent that Mr. Morgan seeks to challenge a state law evidentiary ruling.  Alternately, the

undersigned finds that Ground Four should be DENIED on the merits to the extent that Mr. Morgan contends that the trial court's evidentiary ruling violated his due process rights.

### 1.    Federal Habeas Relief Based on State Law Evidentiary Rulings

As a general matter, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)).

A "state appellate court's interpretation of its own law and evidentiary rules, 'including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Chambers v. Artis*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022), *cert. denied,* 143 S. Ct. 993 (2023) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)); *see also Small v. Brigano,* No. 04-3328, 134 F. App'x 931, 936 (6th Cir. June 17, 2005) (indicating that habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings).  Thus, "[i]n general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012).

It is only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, [that] it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  "[C]ourts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512 (citing *Wright v.*

*Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (bracket in original)).

### 2.      Ground Four is Non-Cognizable on Federal Habeas Review

In Ground Four, Mr. Morgan claims that the trial court abused its discretion by allowing admission of bad acts evidence.  (ECF Doc. 1, p. 12.)  To the extent Mr. Morgan seeks federal habeas relief on the basis that the trial court's admission of the bad acts evidence was contrary to state evidentiary rules, he fails to state a cognizable claim upon which federal habeas relief may be granted.  As explained above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.  Thus, "alleged errors in evidentiary rulings by state courts are [generally] not cognizable in federal habeas review." *Moreland,* 699 F.3d at 923. Accordingly, the undersigned recommends that the Court DISMISS Ground Four as not cognizable.

### 3.      State Court's Adjudication of Mr. Morgan's Bad Acts Evidentiary Claim

To the extent that Mr. Morgan bases Ground Four on an alleged violation of his due process rights (ECF Doc. 1, p. 12), the undersigned also considers Ground Four on its merits. In Ground Four, Mr. Morgan claims the trial court's admission of bad acts evidence violated his due process rights.  (ECF Doc. 1, p. 12.)  The appeals court considered the bad acts evidence assignment of error and found it unavailing.  In doing so, the state court of appeals stated:

> {¶ 18} Appellant's fourth and final assignment of error contends that the trial court abused its discretion when it allowed testimony about his prior bad acts.[] Appellant argues that the state's desire to admit evidence of 18 possibly-related theft offenses in Ohio, Michigan, and Indiana was unfairly prejudicial. The state

counters that the robberies had a "strikingly similar" theme thus establishing a modus operandi of the suspect.

{¶ 19} We note that "the admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). An abuse of discretion is demonstrated where the trial court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} "As a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial is inadmissible." *State v. Thompson*, 66 Ohio St.2d 496, 497, 422 N.E.2d 855 (1981). Evid.R. 404(B) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 21} Appellant argues that the "similarities" in the robberies were too generic to be probative of the suspect's identity; this includes the fact that the robber wore a mask, entered the store when no customers were present, sometimes had his back to the clerk, that the gun was frequently wrapped in plastic, and that the suspect fled on foot.

{¶ 22} During trial, following testimony about a "tip" that appellant had been committing "robberies" and an objection, the court stated that it wanted to "forewarn" the jury about the proper consideration to be given evidence of other acts or crimes unrelated to the charges at issue. It then sustained the objection and gave the "other acts" evidence limiting instruction.

{¶ 23} Testimony and evidence was then presented regarding the Ohio robberies. Thereafter, the trial terminated due to appellant entering his no contest pleas; thus, there had been very little evidence presented regarding the additional robberies. Accordingly, in light of appellant's no contest pleas, we cannot say and will not speculate as to the nature of and what effect the evidence that had not yet been

presented would have had on the outcome of his trial. Appellant's fourth assignment of error is not well-taken.

{¶ 24} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair proceeding and the judgment of the Williams County Court of Common Pleas is affirmed.

*Morgan*, 2020 WL 620407, *4-5; (ECF Doc. 10-1, pp. 140-42 (footnote deleted).)

Given AEDPA's deferential standard of review, the undersigned finds that the state court of appeals' determination that Mr. Morgan was not prejudiced or prevented from having a fair proceeding as a result of the trial court's allowance of evidence regarding additional "other" robberies was not contrary to or an unreasonable application of clearly established federal law. Mr. Morgan has not shown that admission of the bad acts evidence falls within the narrow "category of infractions that violate 'fundamental fairness.'" *Bugh*, 329 F.3d at 512.

Indeed, as the Sixth Circuit has explained: "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512; *see also Thomas v. Schiebner*, No. 22-1420, 2022 WL 16755574, at *1 (6th Cir. Oct. 6, 2022) (recognizing there "is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence" and denying certificate of appealability as to claim that trial court abused its discretion in admitting evidence of other uncharged acts) (quoting *Bugh*, 329 F.3d at 512); *Chambers*, 2022 WL 18542503, at *2 (denying certificate of appealability as to claim that trial court improperly admitted propensity evidence).

Accordingly, to the extent that Mr. Morgan has sufficiently asserted a federal due process claim in Ground Four as opposed to a challenge to a state law evidentiary ruling, the undersigned recommends that the Court DENY Ground Four on the merits.

## IV.    Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DENY** Mr.

Morgan's Petition as to Grounds One, Two, and Three because they are without merit and

**DISMISS and/or DENY** Mr. Morgan's Petition as to Ground Four because it is not cognizable

and is without merit.


Dated: May 23, 2023


/s/ Amanda M. Knapp

AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).